**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| vs. | : | NO.  10-664 |
| | : | |
| JEAN JOSEPH | : | |
| a/k/a "Shaka" | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                           **November 3, 2011**

On October 6, 2010, Jean Joseph, a citizen of Haiti,[1] was indicted by a federal grand jury with six counts of various drug and firearms offenses.  He recently filed a motion to suppress physical evidence to which the government has responded.  I held a hearing on the motion, and for the following reasons, I will deny it in its entirety.

**I.  BACKGROUND**

In September 2009, Detective Joseph Walsh of the Berks County District Attorney's Office learned from a confidential source that an individual known to the source as "Shaka" was selling cocaine.  At the hearing, Detective Walsh testified that on October 14, 2009, Detective Camilla Karns, a detective from his office working undercover, purchased four small bags of crack cocaine from the defendant for $60.  The

---

[1] On November 13, 2003, Mr. Joseph was ordered deported to Haiti, but remained in ICE custody. He was never deported due to lack of a valid passport. On March 16, 2006, Mr. Joseph was placed on Order of Supervision (OSUP), and released from ICE custody pending final removal. Mr. Joseph was advised that he was not admitted to the United States, but had been paroled into the country; that if he violated any of the conditions of release or state, local, or federal laws, he could be taken back into custody; and that once a valid travel document was obtained, he would be required to surrender to ICE for removal. Mr. Joseph was required to report monthly to an ICE Detention and Removal Operations Office. He stopped doing so on February 14, 2007.

confidential source telephoned "Shaka" and arranged the deal. "Shaka" entered Detective Karns's car with the source and gave three bags of crack cocaine to the detective. Detective Karns asked the defendant to give her "extra" and he gave her a fourth bag. Other detectives had been conducting surveillance and observed the defendant exit the front door of an apartment building at 605 North 5th Street, in Reading, Pennsylvania, and walk to Detective Karns's car. Subsequent laboratory testing determined that the four purchased bags contained crack cocaine with an estimated weight of .46 grams.

Detective Walsh also testified that on December 23, 2009, he requested and obtained a "John Doe" state arrest warrant for the arrest of "Shaka" for violations of 35 P.S. §§ 780-113A (16) and (30) (Possession with the Intent and Delivery of Cocaine). On January 5, 2010, Detective Walsh and Detective Trevor Ritter went to the defendant's apartment building and spoke with Shar Leinbach, the owner and landlady of the building. Miss Leinbach identified "Shaka" from a photograph as being Mr. Jean Joseph, an authorized occupant of Apartment #14. Miss Leinbach also indicated that the actual tenant on the lease was Carol Wilson.

On January 12, 2010, Detective Walsh and Detective Ritter arrested Mr. Joseph as he exited the apartment building. A search incident to the arrest recovered from Mr. Joseph's person two cellular telephones, $106.61 in United States currency, and identification in the defendant's name. Mr. Joseph was transported back to the police station where he originally denied having contraband on his person. When told he would be given a thorough physical search, Mr. Joseph responded by saying that he "would get

it" and started to reach into his pants.  Detective Ritter located a clear plastic bag containing fifty smaller baggies of suspected crack cocaine in Mr. Joseph's buttocks area.  The government alleges that the chemistry laboratory report concluded that the packets contained crack cocaine with an estimated weight of 8.3 grams.  A set of keys with a key fob to the apartment building and to Apartment #14 was also recovered from Mr. Joseph.

Detective Walsh further testified that on the day of Mr. Joseph's arrest, Detective Walsh also interviewed Miss Wilson, who stated that she had rented the apartment as a favor to Mr. Joseph because he had poor credit, but that she did not live there.  Miss Wilson also confirmed Mr. Joseph's identity through a photograph.  Later that afternoon, Apartment #14 was secured by the detectives pending a search warrant of the residence which was issued and executed around 8:00 p.m.  The receipt/inventory of seized property, see Gov. Exh. 3, reveals that the following items were recovered from Apartment #14: (1) four bags of marijuana; (2) various pieces of mail and other identification in Mr. Joseph's name; (3) several photographs of Mr. Joseph; (4) $1,800 cash; and (5) a hidden, zippered pouch concealed on the side of the arm chair in the living room.  The pouch contained a digital scale; two clear plastic bags each containing fifty clear plastic packets for a total of 100 packets of crack cocaine; a Beretta .40 caliber pistol, serial # A07608M, with one magazine[2] containing nine live .40 caliber rounds; and a smaller black pouch containing clear and pink plastic packaging material, paraphernalia, tweezers, and a razor blade.

---

[2] The magazine was loaded, but not inserted into the pistol.

The government further alleges that all items were submitted for fingerprint analysis, but no fingerprints were recovered. The chemistry laboratory results determined that the hundred packets contained cocaine base with an estimated weight of 8.0 grams for one set of fifty packets, and 8.9 grams for the second set of fifty packets. The four bags of marijuana weighed 3.9 grams combined.

The government charged Mr. Joseph with possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c); possession of a firearm by a previously-convicted felon, in violation of 18 U.S.C. § 922(g)(1); and possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5)(A).

## II.  STANDARD OF REVIEW

A reviewing court may not conduct a *de novo* review of a judicial officer's determination of probable cause. United States v. Whitner, 219 F.3d 289, 296 (3d Cir. 2000). Rather, a district court's review of an initial probable cause determination is deferential and limited: "A magistrate [judge]'s determination of probable cause should be paid great deference by reviewing courts. The duty of the reviewing court is simply to ensure that the magistrate [judge] had a substantial basis for concluding that probable cause existed." United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993). The Third Circuit summarized the "substantial basis" standard as follows:

> We recognize that a different magistrate judge might have found the affidavit insufficient to support a warrant. However, our role is not to make our own assessment as to whether probable cause existed. Rather, we are constrained to determine only whether the affidavit

4

>provides a sufficient basis for the decision the magistrate judge actually made.

United States v. Jones, 994 F.2d 1051, 1057 (3d Cir. 1993). The Supreme Court held that "[t]he resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Illinois v. Gates, 462 U.S. 213, 236 n. 10 (1983). To determine sufficiency of the warrant, a court must look at the probable cause under the "totality of the circumstances." Id. at 238. Where a judicial officer issued a search warrant, courts must review the warrant pursuant to the standard set forth by the Supreme Court in Illinois v. Gates:

>The task of the issuing magistrate [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate [judge] had a "substantial basis for . . . conclud[ing]" that probable cause existed.

Gates, 462 U.S. at 238-239. The information that supports a warrant must, when viewed within the totality of the circumstances, provide a substantial basis to conclude that a search would uncover evidence of wrongdoing. Id. Courts are also required to consider the cumulative weight of the information set forth by the investigating officer in connection with reasonable inferences that the officer is permitted to make based upon the officer's specialized training and experiences. United States v. Arvizu, 534 U.S. 266, 275 (2002). When deciding whether an affidavit supporting a warrant articulates probable cause sufficient to justify a search, the reviewing court is permitted to consider only the information presented to the judicial officer – namely, the contents of the

5

affidavit itself.  United States v. Hodge, 246 F.3d 301, 305 (3d Cir. 2001).  A probable cause finding does not require that it be "more likely than not" that evidence will be found in the place described.  Texas v. Brown, 460 U.S. 730, 742 (1983).  To uphold the initial probable cause determination, a court need only determine that the judicial officer had a substantial basis for finding that "there [was] a fair probability that contraband or evidence of a crime [would] be found in a particular place."  Gates, 462 U.S. at 238.  "The Fourth Amendment requires no more."  Id. at 236.  Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the judicial officer's probable cause determination.  Id.

## III.  DISCUSSION

The defendant argues that the search warrant was not supported by probable cause and that the search of his residence violated his Fourth Amendment rights requiring its proceeds to be suppressed.  Even where a search is done pursuant to a warrant, "[the Fourth Amendment] generally requires that search warrants be supported by probable cause."  United States v. Vosburgh, 602 F.3d 512, 526 (3d Cir. 2010). "Evidence seized pursuant to a search warrant that is not so supported may be suppressed."  Id.

The defendant argues that Detective Walsh's affidavits fail to supply probable cause to believe that contraband would be found in the defendant's residence.  In fact, the defendant points out inconsistencies between what the detective asserted is typical behavior of drug dealers and what the defendant's behavior was at the time of his arrest.  For example, in his affidavit of probable cause, see Gov. Exh. 2, the detective indicated that (1) drug traffickers avoid having their names tied to assets to avoid detection, but Mr.

6

Joseph was named on the lease as an authorized occupant; (2) drug traffickers keep large amounts of cash on hand, but when Mr. Joseph was searched, he had only $106.61 on his person; (3) drug traffickers routinely keep narcotic paraphernalia on their person or property, but when Mr. Joseph was searched, he had no paraphernalia on his person; (4) drug traffickers commonly have weapons on their person or property for protection, but when Mr. Joseph was searched incident to arrest, police found no weapons, and the arrest proceeded without incident; and (5) drug traffickers frequently engage in counter-surveillance, including the use of fortifications, look outs, two-way radios, binoculars, and video cameras, but Mr. Joseph was not observed engaging in any of this activity. Thus, the defendant's sole basis for arguing that the affidavit lacked probable cause is his alleged divergence from what Detective Walsh indicated was typical behavior of drug dealers. Because of that divergence, Mr. Joseph insists, there was no substantial basis to conclude that a search would uncover evidence of wrongdoing. I strongly disagree.

At the hearing, Detective Walsh testified that he had over twenty years of experience and continual training in the investigation of drug offenses. Thus, I am required to consider the cumulative weight of the information he provided in connection with reasonable inferences that Detective Walsh was permitted to make based upon that specialized training and experience. Arvizu, 534 U.S. at 275. While the affidavit devotes several paragraphs to an outline of the detective's knowledge of the illicit drug culture and the typical behaviors of drug dealers, it does not contend that those behaviors are all-inclusive. In fact, Detective Walsh testified that he has arrested suspects over the years

with all of the behaviors listed, some of the behaviors listed, and even some suspects with none of the behaviors listed.

Nevertheless, the defendant's argument is unpersuasive given the details of this particular case which were provided in the affidavit of probable cause prepared by Detective Walsh. The affidavit contained ample facts to support the judicial officer's determination of probable cause: On October 14, 2009, detectives observed the defendant leaving the apartment building; photographs were taken of the defendant as he left the building, walked to Detective Karn's car, and entered the rear side door of the car; once inside the car, Detective Karns and the defendant had a drug-related conversation, which resulted in the defendant retrieving three bags of suspected cocaine which he handed to the detective; the detective asked for an "extra," and the defendant gave her a fourth bag; the detective handed the defendant $60, and the defendant left the car; the contents of the bags tested positive for crack cocaine; on December 23, 2009, Detective Walsh obtained a "John Doe a/k/a 'Shaka'" arrest warrant for possession, possession with intent; and delivery of cocaine; upon the arrest of the defendant on January 12, 2010, two cellular phones, identification in the name of Jean Joseph, $160.61, a set of keys to the apartment, and one knotted plastic bag containing fifty smaller plastic bags containing suspected cocaine were retrieved from the defendant's person; the contents of the fifty baggies tested positive for crack; and Detective Walsh verified and confirmed the defendant's identity with the apartment building's landlady and with the named tenant of the apartment as an authorized occupant of Apartment #14.

In conclusion, the affidavit in question was sworn by an experienced detective with over twenty years of experience and training in the investigation of drug crimes. The investigation corroborated the detective's opinion that the defendant was involved in illegal drug-related activity. The defendant was in the presence of law enforcement officers on at least two separate occasions when bags of crack cocaine had been concealed on his person. When he was arrested, the defendant had large quantities of crack cocaine hidden in his buttocks area. Viewed under a totality of the circumstances, the affidavit of probable cause more than established a substantial basis for the judicial officer's conclusion that evidence of illegal drug-related activities would be found at the apartment where the defendant resided. I find no defects in the affidavit[3] or warrant.

Accordingly, upon consideration of the motion to suppress the physical evidence, the government's response thereto, and the uncontroverted testimony of Detective Walsh, I will deny the motion to suppress in its entirety.

---

[3] I give no import to the affidavit's few clerical errors discussed at the hearing. They in no way undermine the probable cause found therein.