**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**, | **CRIMINAL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 10-664-KSM-1** |
| **JEAN JOSEPH,** | |
| Defendant. | |

**MEMORANDUM**

**MARSTON, J.**                                                         **November 9, 2021**

Defendant Jean Joseph, who is currently serving a 300 month sentence at the McRae Correctional Facility ("McRae") for distribution of cocaine base ("crack"), possession with the intent to distribute crack, possession of a firearm in furtherance of drug trafficking, possession of a firearm after previously being convicted of a crime punishable by more than a year imprisonment, and possession of a firearm by an illegal alien, filed an emergency motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 94.)  In seeking a reduction in his sentence, Joseph asserts that the COVID-19 pandemic and the recent Delta variant, his medical conditions, and the low vaccination rate among Bureau of Prisons ("BOP") staff place him at an increased risk of harm from the virus and, taken together, amount to extraordinary and compelling reasons justifying his release.  (*Id.*)  The Government opposes Joseph's motion, arguing that because Joseph declined the Covid-19 vaccine when it was offered to him, he cannot establish extraordinary and compelling reasons to support his release and that, in any event, he presents a danger to his community and should not be released.  (Doc. No. 105.)

For the reasons discussed below, the Court denies Joseph's motion.

I.     **Background**

On October 6, 2010, Joseph was charged by a federal grand jury with one count of

distribution and two counts of possession with the intent to distribute crack, all in violation of 21

U.S.C. §§ 841(a) and (b)(1)(C); one count of possession of a firearm in furtherance of a drug

trafficking offense, in violation of 18 U.S.C. § 924(c)(1); one count of possession of a firearm

after previously being convicted of a crime punishable by more than a year imprisonment, in

violation of 18 U.S.C. § 922(g)(1); and one count of possession of a firearm by an illegal alien,

in violation of 18 U.S.C. § 922(g)(5)(A).  (Doc. No. 1.)  Following a jury trial before U.S.

District Judge Lawrence F. Stengel, Joseph was found guilty of all counts.  (Pre-sentence Report

("PSR") at ¶ 1; *see also* Doc. No. 64.)  At his sentencing hearing on March 5, 2012, the Court

granted a downward variance, and departed from the advisory sentencing guideline range of 360

months to life imprisonment and imposed a sentence of 300 months' imprisonment, followed by

five years of supervised release.  (Doc. No. 83 ("Sentencing Hr'g Tr.") at 31:25–33:4; Doc. No.

61 at pp. 2–3.)

Following his sentencing, Joseph appealed, but the district court's judgment was

ultimately affirmed.  (Doc. No. 84.)  On June 1, 2020, Joseph filed a Motion to Vacate, Set

Aside, or Correct his Sentence, pursuant to 28 U.S.C. § 2555.  (Doc. No. 86.)  This Court[1] denied

Joseph's motion on July 12, 2021.  (Doc. Nos. 92–93.)

Joseph is currently housed at McRae in Georgia.  He has served approximately 141

months and has earned good conduct time of approximately 19 months, for a total time served of

approximately 160 months[2] (a little more than half) of his 300 month sentence.  (Doc. No. 105 at

_____

[1] This matter was reassigned from the Honorable Lawrence F. Stengel to the Honorable Karen Spencer
Marston on June 23, 2020.  (Doc. No. 85.)

[2] The Government filed its response brief on September 29, 2021 and represented that Joseph had served

p. 4.)  Joseph now seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc.

No. 94.)

## II.    Legal Standard

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been

imposed without specific authorization."  18 U.S.C. § 3582(c); *see also McMillan v. United*

*States*, 257 F. App'x 477, 479 (3d Cir. 2007).  The compassionate release statute, 18 U.S.C.

§ 3582(c)(1)(A), as amended by the First Step Act, provides such authorization, "empower[ing] a

district court to modify a term of imprisonment on a defendant's motion" after the defendant has

exhausted his administrative remedies.[3]  *United States v. Towel*, Criminal Action No. 17-519-6,

2020 WL 2992528, at *3 (E.D. Pa. June 4, 2020); *United States v. Tartaglione*, Criminal Action

No. 15-491, 2020 WL 3969778, at *3 (E.D. Pa. July 14, 2020).

Under § 3582(c)(1)(A), a court

may reduce the term of imprisonment . . . after considering the factors set forth in
section 3553(a) to the extent that they are applicable, if it finds that –

(i)     Extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements
issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A); *see also United States v. Pawlowski*, 967 F.3d 327, 329 (3d

Cir. 2020).

Congress did not define "extraordinary and compelling reasons," except to advise that

---

140 months and had a total time served of 159 months.  (*See* Doc. No. 105.)

[3] A defendant may move for compassionate release after he "has fully exhausted all administrative rights
to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30
days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18
U.S.C. § 3582(c)(1)(A).  Here, the Government concedes that Joseph has exhausted his administrative
remedies.  (Doc. No. 97.)

"'rehabilitation [of the defendant] alone' does not suffice."  *Towel*, 2020 WL 2992528, at *3

(citing 18 U.S.C. § 944(t)).  Instead, Congress delegated that task to the United States Sentencing

Commission.  18 U.S.C. § 944; *see also Tartaglione*, 2020 WL 3969778, at *4.  In turn, Section

1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A)

may be ordered where a court, after considering the § 3553(a) factors, determines that

"extraordinary and compelling reasons warrant the reduction"; "the defendant is not a danger to

the safety of any other person or to the community"; and "the reduction is consistent with this

policy statement."  U.S. Sentencing Guidelines Manual § 1B1.13; *see also Towel*, 2020 WL

2992528, at *3.

The Sentencing Commission's commentary to § 1B1.13 enumerates categories of reasons

that qualify as "extraordinary and compelling":  (1) certain serious medical conditions (i.e., a

terminal illness or a serious medical condition that "substantially diminishes the ability of the

defendant to provide self-care" and "from which he or she is not expected to recover"); (2) the

defendant's age (over 65), if he or she is also experiencing a serious deterioration of health and

has served at least ten years or 75% of his or her sentence; (3) the defendant's family

circumstances; or (4) other reasons as determined by the Director of the BOP.  § 1B1.13

Application Note 1; *see also United States v. Tommaso*, Criminal No. 15-602-2, 2021 WL

4941490, at *3 (E.D. Pa. Oct. 22, 2021).  "As a result of amendments to § 3582(c)(1)(A) by the

First Step Act, courts now conclude that the catch-all category of 'other reasons' applies not only

to the BOP Director, but also to courts."  *United States v. Justis*, Criminal Action No. 15-416,

2020 WL 43655596, at *2 (E.D. Pa. July 29, 2020) (citations omitted).  "The defendant bears the

burden of proving that extraordinary and compelling reasons exist."  *United States v. Thornton*,

Criminal No. 2:18-167-1, 2020 WL 4368155, at *3 (W.D. Pa. July 29, 2020); *see also Tommaso*,

2021 WL 4941490, at *3.

In sum, in evaluating Joseph's motion for compassionate release, we must consider: (1) whether "extraordinary and compelling" reasons exist to reduce the defendant's sentence; (2) whether the defendant is a danger to the community; and (3) whether the § 3553(a) factors support a sentence reduction. *Justis*, 2020 WL 43655596, at *2 (citations omitted). We address each in turn below.

### III.   Discussion

#### A. Extraordinary and Compelling Reasons

Joseph alleges that he suffers from several underlying medical conditions, including diabetes, diabetes mellitus type 2 without retinopathy, dermatitis, fever, and hyperlipidemia. (Doc. No. 94 at p. 2.)  A review of Joseph's medical records[4] confirms that Joseph has been diagnosed with diabetes, diabetes mellitus type 2 without retinopathy, dermatitis, and hyperlipidemia (*see* Doc. No. 100 at p. 3), and that he has had a fever at certain points (*see id.* at pp. 3, 5, 127, 129).

According to the Centers for Disease Control ("CDC"), having diabetes "can make [an individual] more likely to get severely ill from COVID-19." Ctr. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Oct. 14, 2021) (last visited Nov. 2, 2021).  However, Joseph's medical records do not suggest that Joseph has experienced, or sought care for, any diabetes-specific medical incidents this year.  Joseph takes Metformin to treat his diabetes (Doc. No. 100 at p. 145), and nothing in the record before us indicates that Joseph lacks access to his

---

[4] Pursuant to this Court's order, the Government filed Joseph's medical records under seal.  (Doc. No. 100.)

medication or to appropriate care for his diabetes in prison.[5]  Where, as here, there is no indication that the defendant's diabetes cannot be properly controlled via medication or other appropriate medical care, compassionate release is not warranted.  *See United States v. Hoffman*, Criminal Action No. 01-169, 2021 WL 2810068, at *8 (E.D. Pa. July 6, 2021) (holding that the defendant's type 2 diabetes did not present extraordinary and compelling reasons justifying his release, where the defendant's diabetes "appear[s] well managed while he is incarcerated" and the defendant "takes Metformin to treat his diabetes"); *United States v. Stallings*, Criminal No. 1:12-CR-37, 2020 WL 3619071, at *4 (M.D. Pa. July 2, 2020) (concluding that there were not extraordinary and compelling reasons justifying release because there was "no reason to believe that the BOP cannot adequately treat [the defendant's] medical condition.  The medical records reflect that prison medical staff are diligent about routinely ordering and reviewing lab work and adjusting [the defendant's] diabetes medication as needed . . . The information available shows that the BOP is appropriately managing [the defendant's] chronic and acute medical conditions").

The CDC has not recognized the other medical conditions Joseph cites—dermatitis and hyperlipidemia—as increasing the risk of severity of illness should an individual contract COVID-19.  *See* Ctr. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Oct. 14, 2021) (last visited Nov. 2, 2021); s*ee also Hoffman*, 2021 WL 2810068, at *8 (recognizing that the CDC has not classified hyperlipidemia as a COVID-19 risk factor); *United States v. Sturgell*, Criminal Action No. 15-120, 2021 WL 1731787, at *7 (E.D. Pa. May 3, 2021) (same); *United States v.*

---

[5] The record indicates that in April or June of 2021, Joseph had a follow up appointment at the chronic care clinic, and at that time, his diabetes had worsened "due to lack of reduction in carbohydrate intake." (Doc. No. 100 at p. 162.)  The record also shows that Joseph was then "provided with information on diabetes and carbohydrate containing foods" and that his Metformin dosage was increased.  (*Id.*)

*Gonzalez*, Criminal Action No. 02-446-01, 2021 WL 1088258, at *4 (E.D. Pa. Mar. 22, 2021) (same); *United States v. Moldover*, Criminal Action No. 14-637, 2020 WL 6731111, at *9 (E.D. Pa. Nov. 13, 2020) (same); *United States v. Abreu*, No. 5:16-cr-00233, 2021 WL 1884788, at *4–5 (E.D. Pa. May 11, 2021) (noting that none of the defendant's medical conditions were actual risk factors under CDC guidelines where the defendant asserted that he had, among other things, dermatitis).

An independent review of Joseph's medical records shows that Joseph also has been diagnosed with latent tuberculosis. (*See* Doc. No. 100 at p. 163.) Although the CDC has recognized tuberculosis is a medical condition that can make an individual "more likely to get severely ill from COVID-19," it been silent on whether latent tuberculosis falls within that category. *See* Ctr. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Oct. 14, 2021) (last visited Nov. 2, 2021); *see also United States v. Sanchez*, Criminal No. 08-486, 2021 WL 2903041, at *4 (E.D. Pa. July 9, 2021) (noting that the defendant's latent tuberculosis was not a CDC risk factor); *United States v. Martinez*, Criminal No. 17-171 (SRC), 2021 WL 2651663, at *2 (D.N.J. June 28, 2021) ("The CDC does not associate latent tuberculosis with a greater risk of contracting or suffering complications from COVID-19."). Notably, Joseph has refused treatment for his latent tuberculosis (*see* Doc. No. 100 at p. 165; *see also id.* at p. 167 ("PT [patient] previously stopped treatment with Isoniazid. Discussed risk of developing active TB with PT. He understands his risks and refuses to take the prophylactic TB medication."); *id.* at p. 173 (signed Medical Treatment Refusal Form)), and Joseph is currently asymptomatic (*id.* at p. 164; *accord id.* at p. 52.)

Joseph has not submitted any evidence indicating that he is suffering from any respiratory

complications or that his latent tuberculosis is not controlled or presents any problems for him. Our ruling that his latent tuberculosis is not an extraordinary and compelling reason warranting his release comports with other decisions within this Circuit.  *See United States v. Spikes*, Criminal Action No. 08-201-2, 2020 WL 6044614, at *5 (E.D. Pa. Oct. 13, 2020) (denying compassionate release motion where the defendant did not submit any evidence that he was suffering from any respiratory complications or that his latent tuberculosis was not controlled and there were no positive COVID-19 cases at the facility at which the defendant was serving his sentence); *see also United States v. Johnson*, 850 F. App'x 823, 824 (3d Cir. 2021) (finding that the district court did not abuse its discretion in concluding that the defendant's health conditions did not constitute extraordinary and compelling circumstances warranting his release where the defendant suffered from latent tuberculous and stage 2 chronic kidney failure); *United States v. Aguibi*, 858 F. App'x 485, 486–87 (3d Cir. 2021) (affirming district court's denial of compassionate release where the defendant had latent tuberculosis and a heart murmur); *Martinez*, 2021 WL 2651663, at *2 (concluding that the defendant's latent tuberculosis did not demonstrate extraordinary and compelling circumstances and reasoning that "there is no indication that [the defendant] is suffering from any respiratory complications or that his latent tuberculosis is not well-controlled").

In addition, Joseph's medical records indicate that he is mildly to moderately obese. (*See*, *e.g.*, *id.* at p. 155 (Joseph's body mass index ("BMI") recorded as 30.55); *id.* at p. 159 (Joseph's BMI recorded as 33.99); *id.* at pp. 145–46.); *see also*  Ctr. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Oct. 14, 2021) (last visited Nov. 2, 2021) (classifying individuals with BMIs greater than 30 and less than 40 as obese and those with BMIs over 40 as

severely obese).  According to the CDC, obesity is a risk factor for COVID-19, and "[t]he risk of severe COVID-19 illness increases sharply with elevated BMI."  *See* Ctr. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (updated Oct. 14, 2021) (last visited Nov. 2, 2021).  Here, the Court is persuaded by other courts in this District who have denied compassionate release based on obesity.  *See, e.g.*, *United States v. Williams*, Criminal Action No. 15-471-3, 2020 WL 475674, at *5 (E.D. Pa. Aug. 17, 2020) ("[The defendant's] current body mass index of 31.5 demonstrates that he presents the additional risk factor of obesity . . . Even so, the fact that [the defendant] suffers from obesity during the age of the COVID-19 pandemic does not necessarily mean, on its own, that extraordinary and compelling reasons justify the reduction of his sentence"); *United States v. Kassis*, Criminal Action No. 19-449, 2021 WL 620956, at *3 (E.D. Pa. Feb. 17, 2021) ("Although the CDC identifies obesity as a BMI of 30 or greater as presenting a risk, [the defendant's] BMI is just above that threshold.  Courts have generally denied compassionate release based on mild obesity."); *United States v. Hoopes*, Criminal Action No. 16-509-02, 2020 WL 68889211, at *4 (E.D. Pa. Nov. 24, 2020) (same); *see also Hoffman*, 2021 WL 2810068, at *8 (concluding that the defendant's type 2 diabetes and obesity were not extraordinary and compelling reasons for his release and noting that "courts have routinely denied compassionate release based on diabetes and obesity alone").

In reaching our decision that Joseph's medical conditions do not present extraordinary or compelling reasons supporting his release, we consider the fact that there are currently no active COVID-19 cases at McRae.  *See* Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Nov. 2, 2021) (indicating that at McRae, a privately managed prison, zero inmates are currently positive for COVID-19, one inmate has passed away from COVID-19, and 37 inmates

have recovered from COVID-19).

And, notably, Joseph refused the COVID-19 vaccine when he was offered it in April 2021.[6]  (*See* Doc. No. 100 at p. 54 (consent form signed by Joseph on April 14, 2021, indicating that he "decline[d] to receive the COVID-19 vaccination").)  The Court recognizes that Joseph is within his rights to voluntarily refuse the vaccine; however, Joseph "cannot then claim that the threat posed by COVID-19 represents an extraordinary and compelling reason warranting his early release."  *See United States v. Kassis*, No. 19-cr-449, 2021 WL 3489816, at *3 (E.D. Pa. Aug. 9, 2021) (denying compassionate release for 68-year-old inmate with several medical conditions, who refused the vaccine).  As the Honorable Gene E.K. Pratter recognized, "if the Court was to hold that the mere refusal to be vaccinated represents an extraordinary and compelling reason to warrant release, then inmates would be incentivized to refuse vaccinations. This would be contrary to any good sense considerations of the detained individuals' or society's well-being."  *Id.*

We agree especially in light of the scientific data that shows that "COVID-19 vaccines are safe and effective," and millions of individuals have been vaccinated to date.  *See* Ctr. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/safety/safety-of-vaccines.html (updated Nov. 1, 2021) (last visited Nov. 2, 2021). "Research shows that all COVID-19 vaccines authorized for use in the United States provide protection against COVID-19"; to that end, "COVID-19 vaccination reduces the risk of COVID-

---

[6] Ironically, even though Joseph has declined the vaccine himself, Joseph relies on the low vaccination rate among BOP staff as supporting his motion for compassionate release.  (*See* Doc. No. 94 at p. 6 ("As of Friday July 23, 2021, BOP staff vax rate was 52.4% slightly lower than the 54.8% acceptance. Unvaccinated officers travel between joints bringing the virus with them . . . [O]nly 48% of the BOP staff nationwide have received one dose.  All of this events [sic] made [sic] inmates more vulnerable to get sick with this mortal virus, especially Joseph.").)

19 and its potentially severe complications."  *See* Ctr. for Disease Control & Prevention,

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last updated

Aug. 16, 2021) (last visited Nov. 2, 2021) ("These vaccines are effective at keeping people from

getting COVID-19, getting very sick, and dying.").  "Unvaccinated people have a 6.1 times

greater risk of testing positive for COVID-19 and an 11.3 times greater risk of dying from

COVID-19 compared to *fully* vaccinated people."  *See* Ctr. for Disease Control & Prevention,

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/index.html (cleaned up)

(updated Oct. 30, 2021) (last visited Nov. 2, 2021); *see also* Ctr. for Disease Control &

Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-

effectiveness/breakthrough-cases.html (updated Sept. 7, 2021) (last visited Nov. 2, 2021)

("Studies so far show that vaccinated people are 8 times less likely to be infected and 25 times

less likely to experience hospitalization or death.").

And, Joseph's Delta variant argument is also unavailing, given that the CDC has

recognized that the COVID-19 vaccine—which Joseph declined—"helps protect against Delta

and other known variants."  *See* Ctr. for Disease Control & Prevention,

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (updated Aug. 16,

2021) (last visited Nov. 2, 2021); *see also* Ctr. for Disease Control & Prevention,

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-

effectiveness/breakthrough-cases.html (updated Sept. 7, 2021) (last visited Nov. 2, 2021) ("The

bottom line: COVID-19 vaccines protect people against severe illness, including disease caused

by Delta and other variants circulating in the U.S."); *id.* ("Getting vaccinated is the best way to

slow the spread of COVID-19 and to prevent infection by Delta or other variants."); *id.* ("The

Delta variant is more contagious than previous variants of the virus that causes [sic] COVID-19.

However, studies so far indicate that the vaccines used in the United States work well against the Delta variant, particularly in preventing severe disease and hospitalization."); *see also United States v. Jackson*, Case No. 11-20493, 2021 WL 3417910, at *3 (E.D. Mich. Aug. 5, 2021) ("[W]hile it is true that new variants—particularly the Delta variant—are on the rise, the CDC states that current data suggest that COVID-19 vaccines authorized for use in the United States offer protection against variants currently spreading in the United States.  Thus, Jackson could have mitigated his fear of COVID-19 variants by getting vaccinated.  Accordingly, the Court will not grant Jackson release based on his alleged fear of variants.").

Joseph also contends, without citing any authority, that it is "also confirmed that the vaccine is not that sure as the CDC said because people even after [sic] vaccinated have get [sic] the Covid-19 virus and many of them have died from it."[7]  (Doc. No. 94 at p. 6.)  To be sure, "some people who are vaccinated against COVID-19 will still get sick, because no vaccines are 100% effective."  Ctr. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (updated Aug. 16, 2021) (last visited Nov. 2, 2021); *see also* Ctr. for Disease Control & Prevention,  https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html (updated Sept. 7, 2021) (last visited Nov. 2, 2021) ("Vaccine breakthrough infections are expected.  COVID-19 vaccines are effective at preventing most infections.  However, like other vaccines, they are not 100% effective.").  Nonetheless, breakthrough infections only affect a "small proportion of people, even with the Delta variant" and "tend to be mild."  *Se*e Ctr. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fc

---

[7] This is the closest Joseph comes to offering a reason for his refusal of the vaccine.

oronavirus%2F2019-ncov%2Fvaccines%2F8-things.html (updated Oct. 7, 2021) (last visited

Nov. 2, 2021); *see also* Ctr. for Disease Control & Prevention,

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-

effectiveness/breakthrough-cases.html (updated Sept. 7, 2021) (last visited Nov. 2, 2021) ("Fully

vaccinated people with . . . a breakthrough infection are less likely to develop serious illness than

those who are unvaccinated[.]").  "Even when fully vaccinated people develop symptoms, they

tend to be less severe symptoms than in unvaccinated people," meaning that "they are much less

likely to be hospitalized or die than people who are not vaccinated."  *See* Ctr. for Disease Control

& Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-

effectiveness/breakthrough-cases.html (updated Sept. 7, 2021) (last visited Nov. 2, 2021) *see*

*also* Ctr. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-

ncov/vaccines/effectiveness/work.html (updated Aug. 16, 2021) (last visited Nov. 2, 2021

("mRNA COVID-19 vaccines [i.e., vaccines manufactured by Pfizer and Moderna] have been

shown to provide protection against severe illness and hospitalization among people of all ages

eligible to receive them.").

      Courts in this Circuit have repeatedly held that a defendant's refusal to get the COVID-19

vaccine cuts against a finding of extraordinary and compelling reasons for release.  *See, e.g.*,

*United States v. Singleton*, Criminal Action No. 17-00292-1, 2021 WL 4893376, at *2 (E.D. Pa.

Oct. 20, 2021) ("This Court has repeatedly held that an inmate's refusal to be vaccinated

precludes eligibility for compassionate release." (collecting cases)); *United States v. Graham*,

2021 WL 3728337, at *3 (E.D. Pa. Aug. 23, 2021) ("[T]he overwhelming majority of courts to

consider the issue have concluded that the risk of contracting COVID-19 does not present an

extraordinary and compelling reason for release when an inmate is offered the COVID-19

vaccine and refuses it, absent some medical contraindication."); *United States v. Edwards*, Criminal No. 19-266, 2021 WL 2903074, at *3 (E.D. Pa. July 9, 2021) (explaining that by refusing the vaccine, the defendant "voluntarily declined to mitigate his risk of a severe COVID-19 infection," concluding that the defendant's "refusal to accept a vaccine negates any extraordinary and compelling reason for relief he would otherwise have, such as his obesity and diabetes," and noting that this holding "is in line with other courts in this circuit, who have similarly found that individuals who have declined vaccination to protect them against COVID-19 are not entitled to compassionate release"); *United States v. Pacely*, CR 14-06, 2021 WL 2187076, at *1 (W.D. Pa. May 28, 2021) ("Having declined vaccination, the Defendant has voluntarily declined to provide self-care and mitigate his risk of a severe COVID-19 infection. There is no apparent medical reason that the Defendant should not receive the vaccine. The Defendant did not note that he had ever had a severe allergy or an immediate allergic reaction to a vaccine. Rather, he simply refused. The Defendant bears the burden of demonstrating his entitlement to relief. His unexplained refusal to accept a COVID-19 vaccination when offered negates any otherwise compelling medical reason for release." (cleaned up)); *United States v. Ortiz*, 5:18-cr-00264, 2021 WL 1422816, at *3 (E.D. Pa. Apr. 15, 2021) (concluding that the defendant's "refusal to be vaccinated in the absence of a legitimate medical justification is fatal to his motion for compassionate release"); *Kassis*, 2021 WL 3489816, at *3 ("[The defendant's] contention that he is terrified of dying in prison rings somewhat hollow in light of his affirmative choice to refuse a highly-effective vaccine.").[8]

---

[8] *See also United States v. Hardison*, Criminal Action No. 18-168, 2021 WL 4132435, at *3 (E.D. Pa. Sept. 10, 2021); *United States v. Drexler*, Criminal No. 16-444, 2021 WL 3271260, at *3 (E.D. Pa. July 30, 2021); *United States v. Adams*, Criminal Action No. 18-502-1, 2021 WL 2822939, at *2 (E.D. Pa. July 7, 2021).

The Court is persuaded by these cases and holds that even if Joseph's medical conditions discussed above constituted extraordinary and compelling reasons justifying his early release, those reasons would be negated by Joseph's refusal to get the vaccine. *See Edwards*, 2021 WL 2903074, at *3; *Pacely*, 2021 WL 2187076, at *1.

### B. § 3553(a) Sentencing Factors and Danger to the Community

Even if we found that Joseph's met his burden of showing that there are extraordinary and compelling reasons warranting his release, those considerations would be outweighed by the § 3553(a) factors and his danger to the community.

A court considers multiple factors under 18 U.S.C. § 3553(a), including but not limited to "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant."

Joseph does not acknowledge these factors or offer any evidence of rehabilitation. Joseph has served only slightly more than half of his 300-month sentence; he still has a significant time remaining on his sentence. *See Pawlowski*, 967 F.3d at 331 (holding that "the time remaining in [the] sentence may . . . inform whether immediate release would be consistent with the § 3553(a)) factors"); *see also United States v. Morales-Ortiz*, Criminal Action No. 11-143, 2021 WL 65477, at *5 (E.D. Pa. Jan. 7, 2021) (finding that the defendant had "not shown how releasing him before he serves the full term of his sentence would align with the statutory sentencing factors," where he had only served 139 months of his 180 month sentence for possessing 50 or more grams of methamphetamine, possessing cocaine with the intent to

distribute, possessing a firearm in furtherance of a drug trafficking offense, and possessing a firearm as an illegal alien); *United States v. Bullock*, 833 F. App'x 934, 935 (3d Cir. 2021) (affirming district court's denial of the defendant's compassionate release motion and noting "[i]t was permissible for the District to consider the substantial time remaining to be served on [the defendant's] sentence"). And the sentence Joseph received was already a 60-month downward variance from the Sentencing Guideline Range for his convictions (360 months to life). (*See* Sentencing Hr'g Tr. at 34:9–20.)

Also, at the time of Joseph's arrest for serious drug and firearms offenses, he qualified as a Career Offender and an Armed Career Criminal. (*See* PSR at pp. 10–19; Sentencing Hr'g Tr. at 14:18–25, 29:12–13.) During Joseph's sentencing hearing, the Court noted that Joseph's "arrest and offense conduct was reflective and representative of a pattern of conduct that appears to have been characteristic of Mr. Joseph for much of his adult life." (Sentencing Hr'g Tr. at 28:7–11; *see also id.* at 28:16–19 ("[T]here's every indication that he had been doing this for a substantial period of time and had every intention of continuing with this – with this activity.").) And, contrary to Joseph's belief that he "never hurt nobody" (*id.* at 22:18), drug offenses are not victimless crimes. As Judge Stengel noted, "the distribution of cocaine in the Reading community is a matter that is most serious. The presence of these substances in our communities and neighborhoods and families and cities is an infection. It's malignant. It causes great hardship and grief in people's lives . . . So it's thoroughly bad and certainly [sic] very serious level of criminal behavior." (Sentencing Hr'g Tr. at 28:20–29:6.) Thus, although Joseph's dangerous conduct took place almost twelve years ago, given Joseph's Career Offender and Armed Career Criminal status, the Court finds that Joseph remains a danger to the safety of the community.

For these reasons, granting Joseph compassionate release at this stage would not reflect the seriousness of his crimes, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public from future crimes by him, nor would it prevent sentencing disparities.

**IV.    Conclusion**

For the foregoing reasons, we deny Joseph's motion for compassionate release.

An appropriate Order follows.